UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD RAPHAEL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 05-CV-11617-MLW |
| v. ) | |
| ) | |
| NBA PROPERTIES, INC., ) | **REQUEST FOR ORAL ARGUMENT** |
| GETTY IMAGES (US), INC., and ) | |
| PHOTO FILE, INC., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO TRANSFER VENUE

Defendants NBA Properties, Inc. ("NBA Properties"), Getty Images (US), Inc. ("Getty Images"), and Photo File, Inc. ("Photo File") (collectively, "Defendants") submit this memorandum of law in support of their motion to transfer this case to the United States District Court for the Southern District of New York.

### INTRODUCTION

Plaintiff Richard Raphael brought this action in the District of Massachusetts against three defendants based in New York. The dispute grows out of an agreement between NBA Properties and Mr. Raphael pursuant to which NBA Properties, among other things, was to take custody of Mr. Raphael's NBA photographs, warehouse such photographs at a facility located approximately nine miles from New York City, and license them out of that facility to others. Two such licensees are Getty Images and Photo File — New York-based companies that Mr. Raphael has sued in Massachusetts merely because of their respective licensing arrangements with NBA Properties. Further, although this action involves the rights to Mr. Raphael's photographs during an undefined period of time, for at least one year, photographs taken by Mr.

BOS1554785.2

Raphael were the subject of a second agreement with NBA Properties which conferred exclusive federal jurisdiction to the Southern District of New York.

In addition to that forum selection clause, all of the relevant factors militate towards a transfer to the Southern District of New York because: (i) nearly all of the witnesses are located in the New York City metropolitan area; (ii) the New York City metropolitan area is the locus of the events giving rise to this litigation; (iii) each defendant is a New York corporation primarily operating out of the New York City metropolitan area; (iv) New York law is likely to govern the contracts at issue in this litigation; and (v) nearly all of the documents and/or other information relevant to this litigation are located in or can be accessed from New York and/or New Jersey.

## BACKGROUND

On or around October 1, 1995, Mr. Raphael entered into an agreement with NBA Entertainment, a New York corporation wholly owned by NBA Properties, which provides that NBA Entertainment has the exclusive right to license to others photographs taken by Mr. Raphael and that NBA Entertainment would become the owner of Mr. Raphael's NBA photographs upon Mr. Raphael's death (the "October 1995 Agreement").[1] *See* Compl. at Exh. A; Denenberg Decl. at ¶ 3; Romanelli Decl. at ¶ 4. In exchange for such rights, NBA Properties paid to Mr. Raphael a thirty-thousand dollar ($30,000) advance. *See* Compl. at Exh. A; Romanelli Decl. at ¶ 4. On or around August 1, 1998, Mr. Raphael entered into an agreement with NBA Properties regarding Mr. Raphael's performance of certain photograph assignments

---

[1] In 1995, NBA Entertainment was a wholly owned subsidiary of NBA Properties, a New York corporation. Denenberg Decl. at ¶ 3. In 1998, NBA Entertainment merged with, and became a division of, NBA Properties. *Id.* Upon this merger, NBA Properties assumed all of NBA Entertainment's rights and obligations, including the October 1995 Agreement. *Id.* The status and operations of NBA Photos did not change as a result of the 1998 merger between NBA Entertainment and NBA Properties. *Id.* at ¶ 10. NBA Properties and NBA Entertainment shall be referred to throughout this memorandum of law as NBA Properties.

for NBA Properties and/or NBA teams between August 1, 1998 and July 31, 1999 (the "August 1998 Agreement").  Romanelli Decl. at ¶ 8; Rosenzweig Decl. at ¶ 7 and Exh. 1.  The August 1998 Agreement contains a New York choice of law provision and the parties consented to the exclusive federal jurisdiction of the Southern District of New York.  *See* Rosenzweig Decl. at ¶ 7 and Exh. 1 at 5, ¶ 14.

Each of the Defendants in this case is a New York corporation which principally operates out of the New York City metropolitan area.  NBA Properties is a New York corporation, located at 645 Fifth Avenue in New York City, which is less than four miles from the Southern District of New York.  *See* Denenberg Decl. at ¶ 3.  Getty Images is a New York corporation, located at 75 Varick Street in New York City, which is less than one mile from the Southern District of New York.  *See* Cristallo Decl. at ¶¶ 3-4; Romanelli Decl. at ¶ 11.  Finally, Photo File is a New York corporation, located at 5 Odell Plaza in Yonkers, New York, which is approximately twenty-two miles from the Southern District of New York.  *See* Reilly Decl. at ¶ 3.

Pursuant to the October 1995 Agreement, Mr. Raphael was required to provide to NBA Properties his collection of NBA photographs, which were to be warehoused at NBA Properties' office in Secaucus, New Jersey, approximately nine miles from New York City.  *See* Compl. at Exh. A; Denenberg Decl. at ¶ 3; Romanelli Decl. at ¶¶ 4-5.  During the negotiations for the October 1995 Agreement, Mr. Raphael spent an entire day touring NBA Properties' office with the then-Director of NBA Photos where they discussed how NBA Properties would organize, catalog, and store each of his photographs at the Secaucus facility.  *See* Romanelli Decl. at ¶ 5.

As a result of NBA Properties becoming the exclusive licensor of Mr. Raphael's photographs pursuant to the October 1995 Agreement, Mr. Raphael authorized NBA Properties to engage in the licensing of his photographs to third parties.  *See* Compl. at Exh. A.  NBA

3

Properties entered into agreements with Getty Images and/or Photo File to license NBA photographs owned and/or controlled by NBA Properties from approximately 1994 through to the present, which reflect the New York locus of such activities by including provisions selecting New York law to govern any disputes arising out of the such agreements and providing for jurisdiction in the Southern District of New York.  *See e.g.*, Reilly Decl. at ¶¶ 6, 9 and Exhs. 1 and 2; Romanelli Decl. at ¶¶ 13-14 and Exh. 1 at 2.  In addition, from approximately 1996 through 2000, NBA Properties sent to Mr. Raphael periodic statements indicating the amount of the thirty-thousand dollar ($30,000) advance that NBA Properties had recouped to date based on the revenues received as a result of NBA Properties' downstream licensing of Mr. Raphael's photographs.  *See* Romanelli Dec. at ¶ 7.

Years after NBA Properties began licensing Mr. Raphael's photographs out of the New York metropolitan area, Mr. Raphael attempted to disrupt these licensing arrangements in at least two ways.  First, Mr. Raphael attempted to enter into a separate agreement with Getty Images under which Getty Images would obtain his entire photography collection.  *See* Romanelli Decl. at ¶ 17.  Second, on or around May 4, 2004, Mr. Raphael, through his attorneys, sent a cease and desist letter to NBA Properties, which accused all three Defendants of unlawfully licensing and/or selling Mr. Raphael's photographs to others.  *See* Compl. at Exh. B.

To this day, Mr. Raphael has never provided his entire collection of NBA photographs to NBA Properties as required by the October 1995 Agreement, despite several attempts by NBA Properties to obtain such photographs.  *See* Romanelli Decl. at ¶ 6.  Rather, Mr. Raphael has continued to withhold performance under the October 1995 Agreement while attempting to extract additional consideration from NBA Properties beyond what was required under the October 1995 Agreement.  *See* Denenberg Decl. at ¶¶ 8-9.  In one final attempt to get Mr.

Raphael to comply with the October 1995 Agreement, on or around May 25, 2005, NBA Properties provided Mr. Raphael with a form of an agreement that, if executed, would have modified the terms of the October 1995 Agreement (the "Proposed Agreement"). *See id.* at ¶ 9. The Proposed Agreement and the assignment of intellectual property rights attached as an exhibit thereto each contains a New York choice of law provision and a jurisdiction provision requiring the parties to submit to the exclusive jurisdiction of the courts of New York to resolve any disputes arising out of such agreement. *See id.* at Exh. 1

On August 4, 2005, Mr. Raphael responded to the Proposed Agreement by filing a complaint against the Defendants in the United States District Court for the District of Massachusetts asserting three causes of action, including copyright infringement. Specifically, Mr. Raphael alleges that NBA Properties licensed his photographs to Getty Images and/or Photo File, which in turn made such photographs available to others. *See* Compl. at ¶¶ 22-23. Thus, all of the conduct that Mr. Raphael asserts as unlawful is conduct that took place in the New York City metropolitan area between New York-based companies pursuant to a contract that is highly likely to be governed by New York law.

**ARGUMENT**

Congress "'intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Cruickshank v. Clean Seas Co.*, 2005 U.S. Dist. LEXIS 30862, at *29 (D. Mass. Oct. 19 2005) (*quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (further citations omitted)); *see Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) (noting that a court's decision to transfer venue "is a matter within the discretion of the district court"). Specifically, 28 U.S.C. § 1404(a) provides, "for the convenience of parties and witnesses, in the

5

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

As a preliminary matter, it is undisputable that Mr. Raphael could have filed this case in the Southern District of New York. A federal district court has original and exclusive subject matter jurisdiction over claims brought pursuant to the United States Copyright Act, 17 U.S.C. § 101, *et seq.* under 28 U.S.C. § 1331 and 1338(a), and supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. Further, the Defendants are subject to personal jurisdiction in New York because each defendant is a New York corporation, and venue in the Southern District of New York is proper because NBA Properties has a principal place of business in New York City. *See* Cristallo Decl. at ¶ 3; Denenberg Decl. at ¶ 3; Reilly Decl. at ¶ 3; *see also* 28 U.S.C. § 1391(b)-(c). Thus, the Court must only decide whether transfer of this case "promote[s] the convenience of the parties and witnesses and serve[s] the interest of justice." *Transamerica Corp. v. Trans-American Leasing Corp.*, 670 F. Supp. 1089, 1093 (D. Mass. 1987).

I.  **MR. RAPHAEL EXPRESSLY CONSENTED TO THE EXCLUSIVE FEDERAL JURISDICTION OF THE SOUTHERN DISTRICT OF NEW YORK.**

Transfer of this case to the Southern District of New York is warranted because Mr. Raphael expressly consented "to the exclusive jurisdiction of the court of the State of New York, County of New York, and the United States District Court for the Southern District of New York . . ." for any dispute arising out of the August 1998 Agreement. *See* Rosenzweig Decl. at Exh 1 at 5, ¶ 14; *see also* Romanelli Decl. at ¶ 8; Rosenzweig Decl. at ¶ 7. Under New York law (which the August 1998 Agreement specifies as governing), "[c]ontractual forum selection clauses are ***prima facie* valid and enforceable** . . . ." *Premium Risk Group, Inc. v. Legion Ins. Co.*, 294 A.D.2d 345, 346 (N.Y. App. Div. 2002) (emphasis added). Indeed, "[e]nforcement of forum selection clauses provide certainty and predictability in resolving disputes . . . ." *Id.*

In this case, because Mr. Raphael challenges the Defendants' use of his "photographs of the Celtics and other NBA players" regardless of when such photographs were taken, the August 1998 Agreement is directly implicated by at least part of Mr. Raphael's claims. *See* Compl. at ¶ 27. During the Local Rule 16.1 conference, counsel for Mr. Raphael suggested that the August 1998 Agreement is not at issue in this case. However, the Complaint does not identify the particular photographs that are the subject of the copyright infringement claim, does not limit such photographs by time period, and does not identify or attach copies of the registrations for the copyrights at issue. Accordingly, the August 1998 Agreement is placed at issue in this case by the allegations of the Complaint, and the Court should uphold the parties' selected choice of forum in such agreement and transfer this case to the Southern District of New York.

II.     **A BALANCING OF THE FACTORS OVERWHELMINGLY SUPPORTS THE TRANSFER OF THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK.**

A decision to transfer a case pursuant to Section 1404(a) requires a balancing of several factors, including: the "plaintiff's choice of forum[,] . . . the convenience of the parties and the witnesses, the availability of documents, the possibilities of consolidation and coordination, and the interests of justice." *Princess House, Inc.*, 136 F.R.D. at 18. Of the relevant factors to be considered, "convenience of the witnesses is 'probably the most important factor, and the factor most frequently mentioned . . . .'" *Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 3 (D. Mass. 1987) (further citations omitted). Under this factor, "the Court must consider not only the number of potential witnesses located in the [two] districts, but also the nature and quality of their testimony . . ." *Id.* Further, "the weight to be accorded plaintiff's choice of forum varies with the circumstances of the case," despite the presumption in favor of the plaintiff's choice. *Id.* at 5. In this case, a balancing of the relevant factors overwhelmingly supports a transfer of venue to the Southern District of New York.

7

As set forth in the declarations submitted herewith and as evidenced by Plaintiff's initial disclosures pursuant to Fed. R. Civ. P. 26(a)[2], transfer of this case is warranted because nearly all of the witnesses likely to testify in this litigation reside and work in the New York City metropolitan area. *See id.* (granting defendants' motion to transfer venue where the transferee "forum is more convenient to all of the expected witnesses . . . except plaintiff's principal"). For example:

- **Carmin Romanelli**, former Senior Director of NBA Photos at NBA Properties: (i) was the person primarily responsible for negotiating the October 1995 Agreement between Mr. Raphael and NBA Properties; (ii) had numerous telephone conversations with Mr. Raphael to discuss and negotiate the terms of the October 1995 Agreement; (iii) met with Mr. Raphael for an entire day at NBA Properties' office to tour NBA Properties' operations and explained to Mr. Raphael where his photographs would be cataloged and warehoused at that facility after their transfer to NBA Properties pursuant to the October 1995 Agreement; (iv) had several telephonic conversations with Mr. Raphael following execution of the October 1995 Agreement to arrange for the transfer of Mr. Raphael's NBA photography collection to NBA Properties' office; (v) reviewed and approved periodic accounting statements indicating the remaining balance of the thirty-thousand dollar ($30,000) advance NBA Properties paid to Mr. Raphael pursuant to the October 1995 Agreement; and (vi) discussed the details of the August 1998 Agreement with Mr. Raphael before Mr. Raphael signed such agreement. *See* Romanelli Decl. at ¶¶ 3-8. As Vice President of Sports Business

---

[2] In Raphael's initial disclosures pursuant to Fed. R. Civ. P. 26(a), Raphael disclosed only Mr. Raphael, Gerald Krasker (Raphael's attorney), David Denenberg, Carmin Romanelli, and Charles Rosenzweig as persons likely to have discoverable information. *See* McCreadie Decl. at Exh. 1.

Development of Getty Images, Mr. Romanelli received a telephone call from Mr. Raphael regarding whether Getty Images was interested in entering into an agreement with Mr. Raphael to obtain his photography collection even though Mr. Raphael had already entered into the October 1995 Agreement with NBA Properties. *Id.* at ¶¶ 11-12, 17. Mr. Romanelli is also primarily responsible for the relationship between Getty Images and NBA Properties, has knowledge of the NBA photographs owned and/or controlled by NBA Properties which Getty Images licenses to third parties under the agreement between these parties, and has knowledge of the agreement Getty Images entered into with Photo File. *Id.* at ¶¶ 13-14, 16. Mr. Romanelli, a single parent and primary caregiver of five children, resides approximately 57 miles from New York City and approximately 240 miles from Boston, Massachusetts. *Id.* at ¶¶ 3, 19.

- **David Denenberg**, Vice President of Legal and Business Affairs at NBA Properties was involved in the: (i) drafting of the October 1995 Agreement; (ii) negotiations and discussions of an agreement entered into between NBA Properties and Getty Images in 2001 whereby Getty Images became a licensor of NBA photographic images owned or controlled by NBA Properties; and (iii) discussions with Mr. Raphael where Mr. Raphael attempted to extract additional consideration from NBA Properties beyond what was required under the October 1995 Agreement. *See* Denenberg Decl. at ¶¶ 2-8. Mr. Denenberg also forwarded the Proposed Agreement to Mr. Raphael, through his attorney. *Id.* at ¶ 9. Mr. Denenberg resides approximately 22 miles from New York City and approximately 238 miles from Boston, Massachusetts. *Id.* at ¶ 2.

- **Joe Amati**, Director of Photography of NBA Photos at NBA Properties, oversees the photography department at NBA Properties, the relationship between Getty Images and NBA Properties, and NBA Properties' photography archive. *Id.* at ¶ 10. Mr. Amati was involved in the discussions with Mr. Raphael when Mr. Raphael attempted to extract additional consideration from NBA Properties beyond what was required by the October 1995 Agreement and has knowledge of the Proposed Agreement sent to Mr. Raphael, through his attorney. *Id.* at ¶ 8. Mr. Amati lives approximately 21 miles from New York City and approximately 235 miles from Boston, Massachusetts. *Id.* at ¶ 11.

- **Charles Rosenzweig**, Vice President of Entertainment and Player Marketing at NBA Properties, participated in telephonic discussions with Mr. Raphael that culminated in the October 1995 Agreement and signed the August 1998 Agreement. *See* Rosenzweig Decl. at ¶¶ 3-7 and Exh. 1. Mr. Rosenzweig resides approximately 34 miles from New York City and approximately 250 miles from Boston, Massachusetts. *Id.* at ¶ 2.

- **Marc Seigerman**, former Coordinator of NBA Properties in charge of NBA Properties' photography library, was the person primarily responsible for cataloging, assigning NBA Properties bar code numbers to, and storing photographs owned and/or controlled by NBA Properties, including Mr. Raphael's NBA photographs pursuant to the October 1995 Agreement, and met Mr. Raphael when he toured NBA Properties' photography library. *See* Romanelli Decl. at ¶ 9. Further, as Brand Manager for the NBA at Getty Images, Mr. Seigerman is the liaison between NBA Properties and Getty Images for any service Getty Images provides to NBA

Properties, and is responsible for maintaining relationships with sponsors and/or licensees that utilize NBA photography through Getty Images and overseeing the agreement between Getty Images and Photo File. *Id.* at ¶ 15. Mr. Seigerman resides approximately 24 miles from New York City and approximately 240 miles from Boston, Massachusetts. *Id.* at ¶ 10.

- **Bryan Reilly**, Photo Editor and Operations Manager of Photo File, who has worked at Photo File since 1987 as its first employee, is the person most knowledgeable on: (i) the agreements entered into between Photo File and Getty Images and/or NBA Properties relating to the license and/or use of NBA photographs owned and/or controlled by NBA Properties for sale to others; (ii) the process used by Photo File to create negatives from original slides obtained from NBA Properties; (iii) the downloading of images from Getty Images' website; and (iv) the use of an internal Photo File numbering scheme to index and store such negatives and/or photographic images without use of the photographer's name. *See* Reilly Decl. at ¶¶ 3-10. Mr. Reilly, who is primarily responsible for the day-to-day operations of a small company, resides approximately 26 miles from New York City and approximately 203 miles from Boston, Massachusetts. *Id.* at ¶ 2.

In addition, New York City is the locus of the activities giving rise to this litigation because NBA Properties is the "exclusive licensor" of Mr. Raphael's photographs to others under the October 1995 Agreement. *See* Compl. at Exh. A. As such, any licensing authority undertaken by NBA Properties with respect to Mr. Raphael's photographs necessarily took place from the New York City metropolitan area. This New York locus is further evident in Mr. Raphael's decision to sue Getty Images and Photo File, both of which are New York

corporations operating primarily out of the New York City metropolitan area. Indeed, to the extent that Photo File or Getty licensed and/or sold any of Mr. Raphael's NBA photographs, such transactions would have also likely originated out of the New York City metropolitan area. *See* Romanelli Decl. at ¶¶ 13, 15-16; Reilly Decl. at ¶¶ 6, 9. Accordingly, it is the Defendants' New York-based activities that are the target of Mr. Raphael's Complaint.[3] *See* Compl. at ¶¶ 27-28.

Moreover, as would be expected in a case where the complaint targets activities by and between New York-based companies, nearly all of the documents and/or records relevant to this litigation are likely located in or can be accessed from New York City and/or New Jersey. Such relevant records and/or information within the possession, custody, and/or control of one or more of the Defendants include: (i) duplicates of photographs and transparencies given to NBA Properties by Mr. Raphael; (ii) duplicates of negatives and/or photographic images owned or controlled by NBA Properties and/or Getty Images; (iii) any agreements between NBA Properties and Mr. Raphael, Getty Images, and/or Photo File; (iv) any agreements between Getty Images and Photo File; (v) copies of records containing information relating to the licensing of photographs; and (vi) any correspondence and/or email between any or all of the Defendants.[4]

---

[3] With respect to NBA Properties' Chapter 93A Counterclaim, Mr. Raphael asserts that, "[t]he acts complained of [in NBA Properties' Counterclaims] did not take place . . . in the Commonwealth of Massachusetts." *See* Reply to Counterclaims at 6.

[4] Indeed, according to Mr. Raphael's initial disclosures, there are only a handful of documents and/or photographs located in Massachusetts that are relevant to this litigation. In fact, Mr. Raphael attached copies of all documents in his possession, custody, or control that he expects to use to support his claims or defenses in this litigation to his initial disclosures, except for his NBA photographs (the relevant ones of which are likely in the possession, custody, or control of NBA Properties), printouts from various websites selling Mr. Raphael's NBA photographs (which would necessarily be produced, to the extent that any such printouts exist, by the Defendants), and material available from the United States Copyright office (which none of the parties possess). *See* McCreadie Decl. at Exh. 1.

*See* Denenberg Decl. at ¶ 13; Reilly Decl. at ¶ 12; Romanelli Decl. at ¶ 20; Rosenzweig Decl. at ¶ 9.

Further, transfer of this case to the Southern District of New York is warranted because New York law is highly likely to govern the contracts at issue in this litigation. Under Massachusetts law, " a court 'applies the substantive law of the state which has the more significant relationship to the transaction in litigation . . . .'"[5] *Bergin v. Dartmouth Pharmaceutical, Inc.*, 326 F. Supp. 2d 179, 182 (D. Mass. 2004) (further citations omitted). In this case: (i) the October 1995 Agreement specifically provided that NBA Properties would store Mr. Raphael's photographs and that NBA Properties would be the exclusive licensor of Mr. Raphael's photographs, and thus contemplated the downstream licensing activities by a New York-based company in the New York City metropolitan area; (ii) the agreements entered into between NBA Properties and Getty Images and/or Photo File illustrate the New York locus of NBA Properties' licensing activities in that they are governed by New York law and such parties specifically consented to jurisdiction in New York City; (iii) Mr. Raphael's NBA photographs were cataloged and warehoused in NBA Properties' office; (iv) Mr. Raphael consented to the application of New York law and the exclusive federal jurisdiction of the Southern District of New York in the August 1998 Agreement; and (iv) this lawsuit was filed in this jurisdiction in

---

[5] For contract claims, Massachusetts courts consider the following five factors to determine which state has a more significant relationship to the transaction: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the residence or place of incorporation of the parties. *Bergin v. Dartmouth Pharmaceutical, Inc.*, 326 F. Supp. 2d 179, 181-82 (D. Mass. 2004) (citing the Restatement (Second) of Conflict of Laws § 188 (1971 & Supp. 204)). In this case, given that the October 1995 Agreement occurred between a New York corporation and a Massachusetts resident and such agreement was negotiated in both states (*see* Romanelli Decl. at ¶¶ 4-5), factors 1, 2, and 5 likely have little significance in a conflict of law analysis. *Id.* at 182 (noting that the factors "are to be evaluated according to their relative importance with respect to the particular issue"). Accordingly, the conflict of law analysis would likely focus on the place of performance and the location of the subject matter of the October 1995 Agreement.

response to the Proposed Agreement by NBA Properties containing a New York choice of law provision and a New York City jurisdiction provision.  *See* Compl. at Exh. A; Denenberg Decl. at ¶ 9 and Exh. 1; Reilly Decl. at ¶¶ 6, 9 and Exhs. 1 and 2; Romanelli Decl. at ¶¶ 5-6, 8, 13-14, 16; Rosenzweig Decl. at ¶ 7 and Exh. 1.  Thus, transfer to the Southern District of New York would promote the interests of justice by allowing a federal court in New York to construe a contract likely governed by New York law.

Finally, a transfer of venue is unlikely to delay the disposition of this case or adversely affect the administration of justice.  This motion was discussed at the time of the parties' Rule 26(f) conference on December 19, 2005 and filed promptly thereafter.  Furthermore, the Federal Court Management Statistics Report for 2004 reflects a median time from the filing of a complaint to a trial for a civil case filed in the District of Massachusetts of 31.7 months, as compared with a median time in the Southern District of New York of 26.8 months.  *See* McCreadie Decl. at Exhs. 2 and 3.

## CONCLUSION

For the foregoing reasons, the Court should transfer this case to the Southern District of New York because Mr. Raphael consented to the exclusive federal jurisdiction of the Southern District of New York and transfer promotes the convenience of the parties and witnesses and serves the interests of justice.

## REQUEST FOR ORAL ARGUMENT

Defendants hereby request oral argument on the issues raised by this motion.

        Respectfully submitted,

        NBA PROPERTIES, INC.
        GETTY IMAGES (US), INC., and
        PHOTO FILE, INC.,

        By their attorneys,

         /s/ Gina M. McCreadie
        Nicholas G. Papastavros, BBO No. 635742
        Mark D. Robins, BBO No. 559933
        Gina M. McCreadie, BBO No. 661107
        NIXON PEABODY LLP
        100 Summer Street
        Boston, MA  02110
        Tel:  (617) 345-1000
Dated:  December 28, 2005        Fax:  (617) 345-1300