# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD RAPHAEL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 05-CV-11617-MLW |
| ) | |
| v. ) | |
| ) | |
| NBA PROPERTIES, INC., ) | |
| GETTY IMAGES (US), INC., and ) | |
| PHOTO FILE, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DECLARATION OF DAVID DENENBERG IN
## SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE

I, David Denenberg, hereby declare and state as follows:

1.    This declaration is offered in support of the Motion to Transfer Venue by Defendants NBA Properties, Inc. ("NBA Properties"), Getty Images (US), Inc. ("Getty Images"), and Photo File, Inc. ("Photo File").

2.    I currently reside in Short Hills, New Jersey, which is located within the New York City metropolitan region.  Short Hills is approximately 22 miles from New York City and approximately 238 miles from Boston, Massachusetts.

3.    I am currently Vice President of Legal and Business Affairs at NBA Properties. My office is located at NBA Entertainment, a division of NBA Properties, 450 Harmon Meadow Boulevard, Secaucus, New Jersey, which is located approximately nine miles from the United States District Court for the Southern District of New York, at 500 Pearl Street in New York City. Until December 1, 1998, NBA Entertainment, a New York corporation, was a wholly-owned subsidiary of NBA Properties, which is also a New York corporation with a principal place of business at 645 Fifth Avenue in New York City, located less than four miles from the

Southern District of New York. On December 1, 1998, NBA Entertainment merged with, and became a division of, NBA Properties. Upon this merger, NBA Properties assumed all of NBA Entertainment's rights and obligations.

4.    As Vice President of Legal and Business Affairs, I handle many of the legal matters for NBA Properties, including television, talent, music, and photography negotiations. I also assist in running NBA Properties' footage licensing business, which includes the licensing of footage from NBA games to third parties.

5.    In March of 1995, I was hired by NBA Properties as a staff attorney. At this time, my office was located at NBA Properties' headquarters in New York City. Sometime after March of 1995, my office moved to NBA Entertainment's office in Secaucus, New Jersey. In October of 2000, I was promoted to Deputy General Counsel. I held this position until I became Vice President of Legal and Business Affairs in October of 2001. With each promotion at NBA Properties, I have taken on an increased level of responsibility and managerial functions.

6.    In 1995, I was involved in drafting the October 1, 1995 letter agreement between NBA Entertainment and Richard Raphael (the "October 1995 Agreement"). My work in drafting the October 1995 Agreement took place during approximately the time period in which I was relocated from New York City to New Jersey.

7.    In or about October of 2001, NBA Properties entered into an agreement with Getty Images whereby Getty Images and Getty Images, Inc. became a licensor of NBA photographic images owned or controlled by NBA Properties. Under this agreement, Getty Images obtained the right to license such photographic images, including Mr. Raphael's photographs, to third parties. I was involved in the negotiations and discussions of this agreement, which principally took place in New York City and New Jersey.

8.       On or around May 4, 2004, Mr. Raphael, through his attorney, sent NBA Properties a letter requesting that NBA Properties cease any license or sale of Mr. Raphael's photographs. Upon receiving this letter, I, along with Joe Amati, Senior Director of Photography of NBA Entertainment, met with Mr. Raphael and his attorney in Mr. Raphael's office in an attempt to obtain the items that Mr. Raphael was required to provide under the terms of the October 1995 Agreement. I also participated in several telephone discussions with Mr. Raphael's attorney regarding the same. Throughout these discussions, Mr. Raphael repeatedly attempted to extract additional consideration from NBA Properties beyond what was required under the October 1995 Agreement.

9.       In one final attempt to get Mr. Raphael to comply with the October 1995 Agreement, on or about March 25, 2005, I forwarded to Mr. Raphael's attorney, with a copy to Mr. Amati, a proposed form of an agreement which would potentially modify the October 1995 Agreement (the "Proposed Agreement"). Neither Mr. Raphael nor his attorney responded to the Proposed Agreement. The Proposed Agreement and the assignment of intellectual property rights attached thereto contain New York choice of law provisions and provisions requiring the parties to submit to the exclusive jurisdiction of a New York court to resolve any dispute arising out of such proposed agreement. A true and correct copy of the Proposed Agreement with the assignment of intellectual property rights attached as an exhibit thereto is attached hereto as Exhibit 1.

10.      Mr. Amati has worked for NBA Entertainment, and subsequently for NBA Properties, for approximately twelve years. During his career at NBA Entertainment and NBA Properties, he has held several positions within NBA Photos until he became Senior Director of Photography in or around February of 2004. Such positions have included: Assistant;

3

Coordinator; Manager; Senior Manager; and Director of Photography. As Senior Director of Photography, Mr. Amati oversees the photography department of NBA Entertainment, including the relationship between Getty Images and NBA Properties and NBA Entertainment's photography archive. The status and operations of NBA Photos did not change as a result of the 1998 merger between NBA Entertainment and NBA Properties.

11.    Mr. Amati currently resides in Cedar Grove, New Jersey, which is located within the New York City metropolitan area. Cedar Grove is approximately 21 miles from New York City and approximately 235 miles from Boston, Massachusetts.

12.    As NBA Entertainment's office is located approximately nine miles from the United States District Court for the Southern District of New York, it would be significantly more convenient for me if the trial of this action proceeds in New York City, as opposed to Massachusetts.

13.    To the best of my knowledge, any records and/or documented information within NBA Properties' possession, custody, or control that are potentially relevant to this litigation are located in New York City and/or New Jersey. Examples of such records and/or documented information include without limitation: duplicates of photographs and transparencies given to NBA Properties by Mr. Raphael; copies of negatives, photographs, and/or photographic images owned or controlled by NBA Properties; any agreements between NBA Properties and Mr. Raphael, Getty Images, and/or Photo File; copies of records containing information relating to the licensing of Mr. Raphael's photographs, including copies of revenue statements relating to Mr. Raphael; and any correspondence and/or email between NBA Properties and Getty Images and NBA Properties and Photo File.

4

Signed under the pains and penalties of perjury this 27th day of December, 2005.

David Denenberg

 **NBA Entertainment**

May __, 2005

Mr. Dick Raphael
239 Causeway Street
Boston, MA 02114

Dear Mr. Raphael:

We refer to the agreement between you and NBA Photos (now known as NBA Entertainment, a division of NBA Properties, Inc.; "NBAE")) dated as of October 1, 1995 (the "Existing Agreement"). The parties have decided to reformulate the Existing Agreement in the manner set forth below, and, upon execution of this agreement (including the Assignment of Intellectual Property Rights attached as Exhibit A hereto and incorporated herein; collectively, this "Agreement"), the Existing Agreement shall be of no further force or effect. Notwithstanding anything to the contrary contained in the Existing Agreement, the parties hereto agree as follows:

1.     Effective as of the execution of this Agreement, you hereby irrevocably assign, sell and transfer to NBAE, absolutely and forever, the copyright and all other right, title and interest throughout the world in and to all photographs (including all originals), negatives and other photographic materials (a) that you have ever taken involving NBA game action, (b) that you have ever taken involving current or former NBA players, coaches or personalities and (c) that were taken by any other person or entity and acquired by you (or that you otherwise own by any other means) involving NBA game action and/or current or former NBA players, coaches or personalities (the materials in (a), (b) and (c) shall be collectively referred to herein as the "Materials"). On or before June 13, 2005, you will deliver to NBAE, at a place to be reasonably determined by NBAE, all originals of the Materials. You agree to execute, acknowledge and deliver any and all further instruments that NBAE may deem necessary to confirm, protect and preserve NBAE's sole and exclusive ownership rights, including, without limitation, all copyrights, in and to the Materials, and you hereby appoint NBAE as your "Attorney-In-Fact" for the purpose of executing, acknowledging, and delivering any and all such further instruments.

2.     The parties specifically agree that, as the owner of the Materials, NBAE shall have the exclusive right to license, sell, exploit or otherwise dispose of the Materials in any manner it desires, in its sole discretion. In connection therewith, you hereby grant to NBAE and its affiliates, licensees and sublicensees the worldwide right in perpetuity to use your name, biography and likeness in connection with the promotion and exploitation of the Materials.

3.     In consideration for your execution of this Agreement, assignment to NBAE of all rights in and to the Materials and transfer of the Materials to NBAE and provided you are not in breach of this Agreement, (a) NBAE will pay you a total of $____ payable in two (2) equal installments as follows: (i) $____ within five (5) business days of receipt by NBAE of all Materials (the "Delivery Date"); and (ii) $____ on or before the date that is one (1) year following the Delivery Date; and (b) NBAE will provide you with a DVD copy of all of the photographs included in the Materials to enable you personally to sell prints of such photographs only directly to consumers (but not to a company or any other entity) in a manner similar to the manner in which you are selling such photographs, and in a volume similar to the volume of prints that you are selling, as of the date of this Agreement; provided, however, that (i) such prints may be used by such consumers for personal

use only, (ii) no NBA intellectual property (e.g., the name "Boston Celtics") may be used in any promotion or advertising for such sales, (iii) you shall be solely responsible for all clearances in connection with the sale of such photographs (including, without limitation, clearances with respect to the use of the players, coaches or any other individuals that may be included in the photographs) and (iv) you shall be solely responsible for all such sales and promotional activities and shall indemnify NBAE, its affiliates, and their respective officers, employees and agents from and against any and all claims, damages and expenses arising from such sales and promotional activities. Your right to sell such photographs is personal to you and may not be exercised by you through any person or entity, may not be assigned to any person or entity in any manner and shall terminate upon your death. The consideration specifically set out in this Section 3 is the sole consideration that you (or anyone claiming on your behalf) shall receive in exchange for all of the rights granted by you hereunder.

4.      Each of you and NBAE, on behalf of their respective assigns and heirs, waives and releases the other party from any and all claims and obligations arising from the Existing Agreement.

5.      You hereby represent and warrant that, immediately before the assignment to NBAE that is effectuated hereunder, you own all of the right, title and interest in and to the Materials (including all copyrights thereto), and you shall indemnify NBAE for all claims, demands and causes of action that may arise from your breach of such representation and warranty or any other provision of this Agreement.

6.      This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to its choice-of-law principles. Any claim arising under this Agreement shall be prosecuted only in the City of New York and you hereby irrevocably consent to such jurisdiction solely for that purpose.

7.      This Agreement constitutes the entire agreement and understanding between the parties and cancels, terminates and supersedes any prior agreement or understanding relating to the subject matter of this Agreement, including, but not limited to, the Existing Agreement. This Agreement may not be amended or otherwise modified except by a writing signed by both parties that references this Agreement.

8.      This Agreement may be executed in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same document. Signatures sent by facsimile shall be deemed original signatures.

Very truly yours,

NBA ENTERTAINMENT, a division of
NBA Properties, Inc.


By:_____

AGREED TO AND ACCEPTED:

DICK RAPHAEL


By:_____

2

May 25, 2005

## EXHIBIT A

## ASSIGNMENT OF INTELLECTUAL PROPERTY RIGHTS

THE PARTIES TO THIS ASSIGNMENT AGREEMENT EXPRESSLY UNDERSTAND
AND AGREE AS FOLLOWS:

1.  The undersigned, Dick Raphael ("Photographer") hereby irrevocably
assigns, sells and transfers to NBA Entertainment, a division of NBA
Properties, Inc. ("NBAE"), absolutely and forever, the copyright and
all other right, title and interest throughout the world in and to all
photographs (including all originals), negatives and other
photographic materials (i) that Photographer has ever taken involving
NBA game action, (ii) that Photographer has ever taken involving NBA
players, coaches or personalities and (iii) that were taken by any
other person or entity and acquired by Photographer (or that
Photographer otherwise owns by any other means) involving NBA game
action and/or current or former NBA players, coaches or personalities
(the materials in (i), (ii) and (iii) shall collectively be referred
to herein as the "Materials") including, but not limited to:
>       (a) the right to sue for past infringement thereof; and
>       (b) all intellectual property and other legal rights therein of
every kind now or hereafter known or recognized, including, but not
limited to, copyright, trademark and service mark rights, and any
goodwill associated therewith.

2.      Without limiting the generality of Paragraph 1 above,
Photographer hereby sells, assigns, and transfers, absolutely and
forever, for the sole benefit of NBAE, and in the sole discretion of
NBAE, the following exclusive rights and privileges in, to, and in
connection with, the Materials:
>       (a) the right to make adaptations or versions of the Materials
or any part thereof for any purpose whatsoever including, without
limitation, the right to create converted works by reproducing the
Materials into any form or medium now known or hereafter to become
known, including, but not limited to, all formats of electronic,
magnetic, digital, laser or optical-based media (the "Converted
Works");
>       (b) the right to produce, transmit, exhibit, and exploit such
adaptations or versions, or cause the same to be produced,
transmitted, or exploited by any means or devices whatsoever now or
hereinafter known;
>       (c) the right to use the Materials and the Converted Works in
whole or in part, to arrange, modify, and change the same, and add to
or subtract therefrom;
>       (d) the right to register the Materials and the Converted
Works, and any adaptation or version thereof, for copyrights,
trademarks and service marks in the United States or elsewhere in

NBAE's name or otherwise for its sole benefit and to secure renewals or extensions of such copyrights in its name or otherwise;

    (e)  the right to use the Materials and the Converted Works on product labels, in advertisements and promotional literature and otherwise to use the Materials and the Converted Works for purposes of trade; and

    (f)  the right to use the Materials and the Converted Works with any title that NBAE deems appropriate.

3.    Photographer hereby waives, forfeits, relinquishes and abandons all rights of droit moral (moral rights), including, without limitation, rights of attribution and integrity as to the Materials and the Converted Works for such uses as are set forth in Paragraph 2 above.  Photographer acknowledges that NBAE shall own and possess all right, interest and title to the Materials and the Converted Works, and Photographer disclaims any and all proprietary interest therein.

4.    Photographer and any of its successors in interest further agree that it shall execute, acknowledge, and deliver any and all further instruments that NBAE may deem necessary to confirm, protect, and preserve NBAE's sole and exclusive ownership rights, including, without limitation, all copyrights, trademarks, and service marks, in and pertaining to the Materials and the Converted Works, and Photographer hereby appoints NBAE as "Attorney-In-Fact" for the purpose of executing, acknowledging, and delivering any and all such further instruments.

5.    This Assignment Agreement shall inure to the benefit of NBAE and all of its or their successors, assigns, subsidiaries, licensees and distributors.

6.    This Assignment Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts negotiated and fully performed in New York.  Each of the parties hereby submits to the exclusive jurisdiction of the courts of the State of New York, for the purpose of any suit or action or other proceeding arising out of any party's obligations under or with respect to this Assignment Agreement.

CONSENTED AND AGREED TO:

DICK RAPHAEL

NBA ENTERTAINMENT, a division of NBA Properties, Inc.

_____
Signature

_____
Signature

2