UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD RAPHAEL,

        Plaintiff,

v.

NBA PROPERTIES, INC.,
GETTY IMAGES (US), INC., and
PHOTO FILE, INC.,

        Defendants.

CIVIL ACTION NO. 05-11617MLW

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE AND REQUEST FOR A HEARING

### I. INTRODUCTION

Plaintiff Richard Raphael ("Raphael"), by his attorneys, hereby files his opposition to Defendants' Motion to Transfer Venue. Defendants do not even begin to sustain their heavy burden of establishing that Raphael's choice to sue in his home forum should be disturbed to suit their convenience.

### II. FACTS

Raphael, a well-known sports photographer who served as the official team photographer for the Celtics in the 1970s and 1980s, is a life-long resident of Marblehead, Massachusetts. In 1995, Raphael was approached by NBA Entertainment, Inc., now a division of Defendant NBA Properties, Inc., (hereinafter "NBA") regarding (i) licensing of his photographs of the Celtics and other NBA players; and (ii) taking new photographs of Celtics games under a "work-for-hire" arrangement. (Affidavit of Richard Raphael, ¶ 2).

Raphael's discussions and negotiations with NBA took place at Raphael's office in Boston, Massachusetts, and at NBA's offices in New Jersey. Negotiations were conducted in part through Raphael's attorney, Gerald Krasker, who then worked out of Boston. Mr. Krasker is now retired and is a resident of Massachusetts and Florida. (Raphael Aff., ¶¶ 2-3).

During the parties' course of negotiations, NBA presented to Raphael and Raphael signed a letter dated "As of October 1, 1995" ("the October 1995 Letter") (Complaint, Ex. A). The October 1995 Letter distinguished between so-called "Old Material" (pre-existing photographs that NBA sought to obtain the copyright to) and "New Material" (photographs to be taken by Raphael in the future under a work-for-hire arrangement). (Raphael Aff., ¶ 5).

During these discussions, Raphael left NBA with many duplicate photographs and duplicate transparencies; however, Raphael maintains the originals of his entire library of photographs in Marblehead, Massachusetts. (Raphael Aff., ¶7).

Sometime after the October 1995 Letter, Raphael took photographs of Celtics games for NBA under a "work-for-hire" arrangement for a set fee. Raphael has never raised any claims of any nature against any of the Defendants, formally or informally, concerning these photographs.[1] (Raphael Aff., ¶5).

The Complaint sets forth claims against Defendants with respect to the "Old Material" only. The Complaint, like the October 1995 Letter, distinguishes between photographs that were in existence in 1995 and new photographs that were taken under a work-for-hire arrangement. (Complaint, ¶15).

---

[1] This is not to say that Raphael concedes that the work-for-hire arrangement whereunder NBA claims copyright to said photographs meets the standards set forth in §101 of the 1976 Copyright Act. Under §101, works created under a work-for-hire arrangement are owned by the employer or commissioning party, not the creator.

2

In May, 2004 Raphael sent NBA a demand letter relating to NBA's use of his photographs that pre-existed the work-for-hire arrangement (so-called "Old Material"). (Complaint, Ex. B). Following NBA's receipt of the demand letter, representatives of NBA and counsel for Raphael had an in-person meeting in the Boston area, during which Raphael's claims were discussed at length. It was made clear during that meeting that Raphael was making no claims whatsoever regarding the work-for-hire photographs, but that Raphael's complaint related solely to his older photographs, duplicates of which had been left in NBA's possession in 1995 when the parties' negotiations commenced. (Affidavit of Molly Cochran, ¶2).

On or around December 19, 2005, in a discussion with Defendants' counsel concerning the instant motion, counsel for Raphael clearly and explicitly stated that the Complaint does not relate to the work-for-hire photographs that are the subject of a 1998 letter executed by Raphael. (Cochran Aff, ¶5).

Raphael is 67 years of age, is severely overweight, and suffers from diabetes and hypertension. As the result of his health condition, Raphael rarely travels outside the Marblehead area. Travel to New York City would impose a physical hardship on Raphael and would make litigation of this matter much more difficult. Raphael has been retired since 2001, and his annual income since that time has typically averaged less than $10,000. For Raphael to have to incur expenses in traveling to New York City for hearings and for trial,[2] in paying additional travel expenses of his current counsel, and in having to retain local counsel admitted to the Southern District of New York would impose a serious, if not insurmountable, financial hardship. (Raphael Aff., ¶¶ 1, 6).

---

[2] Raphael will already incur the considerable expense of traveling to New York for depositions.

3

In contrast to Raphael's extremely constrained circumstances, NBA has franchises in 29 cities, including Boston. NBA-TV broadcasts worldwide. The Defendants enjoy tremendous advantages over Raphael by virtue of their power and resources.

III. ARGUMENT

    A.    Defendants Cannot Sustain Their Heavy Burden of Depriving the Plaintiff of His Choice of Forum.

Their complaints about inconvenience notwithstanding, Defendants have not even begun to offer sufficient evidence to justify disturbing Raphael's choice of forum. Raphael has not, in fact, chosen an inconvenient forum for resolution of this dispute, but it is Defendants' manifest defense strategy to make litigation of this matter as costly and onerous as possible for Raphael. The court is presented here with a lone individual who has been deprived of his livelihood due to Defendants' actions facing down the almost limitless resources of three large corporate defendants. That Defendants, who are profiting from Raphael's creative work, should have the audacity to complain that they should be involved in litigation beyond the comforts of their corporate headquarters in the New York area is simply remarkable.

The law does not support Defendants' extraordinary motion. 28 U.S.C. §1404(a) provides: "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A motion to transfer is a matter within the district court's discretion, and the court's ruling on a motion to transfer is "entitled to considerable deference." *Auto Europe, LLC v. Connecticut Indem. Co.*, 321 F.3d 60, 64 (1st Cir. 2003); *The Soc'y of Lloyd's v. Carter*, 2003

U.S. Dist. LEXIS 4017 *7 (D. N.H. March 14, 2003). Motions to transfer under §1404(a) are rarely granted in the First Circuit.[3]

The party seeking transfer has a "heavy burden," as the plaintiff's choice of forum should generally not be disturbed. *Cody v. Ashcraft & Geral*, 223 F.3d 1, 11 (1st Cir. 2000) ("there is a strong presumption in favor of the plaintiff's choice of forum"); *The Soc'y of Lloyd's v. Carter*, 2003 U.S. Dist. LEXIS 4017 *6-7 (D. N.H. March 14, 2003) ([t]he starting point in any motion to transfer venue under 28 U.S.C. §1404(a) is due respect for the plaintiff's choice of forum"); *Stanton v. Metro Corp.*, 2005 U.S. Dist. LEXIS 3773 *9 (D. Mass. March 7, 2005) (same); *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp.2d 102, 116 (D. Mass. 2003) (presumption exists in favor of plaintiff's choice of forum); *Cole v. Central States Southeast*, 225 F. Supp. 96, 99 (D. Mass. 2002) ("there is a presumption in favor of the plaintiff's choice of forum"); *Pujols v. Ser-Jobs for Progress Nat'l, Inc.*, 1999 U.S. Dist. LEXIS 5532 *5-6 (D. P.R. March 29, 1999) ("There is a heavy presumption that the plaintiff's choice of forum should be respected" and "[u]nless the balance of the factors strongly favors the transferee forum, the original choice of forum should not be disturbed").

Respect for the plaintiff's choice of forum is especially strong where the plaintiff is a resident of the state where the action was filed. *Martinez v. Potter*, 383 F. Supp.2d 300, 302 (D. P.R. 2005) ("it is well established that the plaintiff's choice of forum must be given significant

---

[3] Motions to transfer were denied in the following cases: *Auto Europe, LLC v. Connecticut Indemnity Co.*, 321 F.3d 60 (1st Cir. 2003); *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708 (1st Cir. 1996); *Stanton v. Metro Corp.*, 2005 U.S. Dist. LEXIS 3773 (D. Mass. March 7, 2005); *Martinez v. Potter*, 383 F.Supp.2d 300 (D. P.R. 2005); *Reebok Int'l, Ltd. v. Dunkadelic, Inc.*, 2004 U.S. Dist. LEXIS 3167 (March 2, 2004); *The Soc'y of Lloyd's v. Carter*, 2003 U.S. Dist. LEXIS 4017 (D. N.H. March 14, 2003); *Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp.2d 102 (D. Mass. 2003); *Cole v. Central States Southeast*, 225 F. Supp. 96 (D. Mass. 2002); *Sigros v. Walt Disney World Co.*, 129 F. Supp.2d 56 (2001); *Kleinerman v. Luxtron Corp.*, 107 F.Supp.2d 122 (D. Mass. 2000); *Veryfine Products, Inc. v. Phlo Corp.*, 124 F.Supp.2d 16 (D. Mass. 2000); *Demont & Assoc. v. Berry*, 77 F. Supp. 2d 171 (D. Me. 1999); *Pujols v. Ser-Jobs for Progress Nat'l, Inc.*, 1999 U.S. Dist. LEXIS 5532 (D. P.R. March 29, 1999); *Ashmore v. Northeast Petroleum Division of Cargill, Inc.*, 925 F. Supp. 36 (D. Me. 1996).

weight when he sues in his home district and generally cannot be disturbed"); *Demont & Assoc. v. Berry*, 77 F.Supp.2d 171, 173 (D. Me. 1999) (defendant "bears a substantial burden," especially where the forum is plaintiff's home forum); *Kleinerman v. Luxtron Corp.*, 107 F. Supp.2d 122, 125 (D. Mass. 2000) (plaintiff's choice of home forum elevates defendant's hurdle).

Indeed in the *forum non conveniens* context it has been held that:

> a plaintiff should not be deprived of the advantages of its own choice of jurisdiction except upon a clear showing of facts which either "(1) establish such oppressiveness and vexation to a defendant to be all out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems."

*Veryfine Products, Inc. v. Phlo Corp.*, 124 F. Supp.2d 16, 21 (D. Mass. 2000) (*citing Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996) and *Koster v. Lumbermen's Mut. Co.*, 300 U.S. 518, 524 (1947)).[4]

Under §1404, a court "must balance several factors, including the convenience of the parties and witnesses, the availability of documents, and the interests of justice." *Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp.2d 102, 116 (D. Mass. 2003). The court should also examine "the connection between the relevant events and the forum." *Pujols v. Ser-Jobs for Progress Nat'l, Inc.*, 1999 U.S. Dist. LEXIS 5532 *5 (D. P.R. March 29, 1999).

Defendants fail to make out a case for transferring this case to the Southern District of New York. To begin with, this case involves contacts, documents, and witnesses from *three* states—Massachusetts, New Jersey, and New York. Indeed NBA's offices are located in New

---

[4] *Veryfine Products* invoked these principles in examining a motion under §1404, commenting that courts "essentially look to the forum non conveniens factors" in making a decision under §1404. 124 F. Supp.2d at 21. *See also Demont & Assoc. v. Berry*, 77 F.Supp.2d 171, 173 n.2 (D. Me. 1999) (the principles underlying forum non conveniens and application of §1404 "are often identical").

Secaucus, New Jersey. The scope of New Jersey involvement alone undercuts Defendants' insistence that New York is the manifestly proper forum.

The existence of relevant documents located in New York and New Jersey does not weigh in Defendants' favor. Doubtlessly many documents will be photocopied and exchanged during the discovery process, and those photocopies will be used at trial. It matters not to the litigation process whether the documents were photocopied from a location near to or distant from the courthouse. In the unlikely event original documents in Defendants' possession in New York and New Jersey are to be reviewed during discovery, the burden of conducting such review will fall on Raphael, and Defendants will suffer no inconvenience. In the event original documents would actually be used at trial, it should be remembered that the originals of Raphael's photographs are located in Massachusetts. In short, there really is no logical support for the argument that the location of relevant documents makes New York a more convenient forum than Massachusetts. In *Ashmore v. Northeast Petroleum Division of Cargill, Inc.*, 925 F. Supp. 36 (D. Me. 1996), the court dismissed the defendant's argument that the case should be transferred because the documents were located in another state, noting that the defendant "failed to demonstrate how it will be inconvenienced by the location of documents two hours from this Court. Presumably, the same mailing to Plaintiff's counsel in response to discovery requests must occur, regardless of where the trial is held." *Id.* at 39.

Defendants have labored hard to demonstrate that there are witnesses who will be inconvenienced by travel to Boston for trial of this matter. Defendants ignore that travel to New York will be equally inconvenient for Raphael and his chief witness, Gerald Krasker. Courts have held that transfer of venue is inappropriate "where its effect merely shifts the inconvenience from one party to another." *Holmes Group, Inc. v. Hamilton Breach/Proctor Silex, Inc.*, 249 F.

Supp.2d 12, 16 (D. Mass. 2002), *cited in Reebok Int'l, Ltd. v. Dunkadelic, Inc.*, 2004 U.S. Dist. LEXIS 3167 *11 (D. Mass. March 2, 2004); *accord Sigros v. Walt Disney World Co.*, 129 F.Supp.2d 56 (D. Mass. 2001); *Pujols v. Ser-Jobs for Progress Nat'l, Inc.*, 1999 U.S. Dist. LEXIS 5532 *6 (D. P.R. March 29, 1999). *See also Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp.2d 102, 116 (D. Mass. 2003) (denying motion to transfer where "no matter where this case is tried, one side or the other will be inconvenienced"); *Demont & Assoc. v. Berry*, 77 F.Supp.2d 171, 174 (D. Me. 1999) (while it would undoubtedly be more convenient for defendant and its witnesses if the case were transferred, "more is required before this Court will disturb Plaintiff's choice of this forum").

Moreover, it has been held that the location of witnesses factor diminishes in importance where the witnesses are employed by a party to the action, who can secure their appearance regardless of the location of the suit. *Sigros v. Walt Disney World Co.*, 129 F. Supp.2d 56, 2001 U.S. Dist. LEXIS 4418 *36 (D. Mass. 2001); *Kleinerman v. Luxtron Corp.*, 107 F. Supp.2d 122, 125-26 (D. Mass. 2000). It appears that all of Defendants' proposed witnesses are current employees of Defendants, and thus there is no concern about securing the appearance of remote witnesses.

The court's analysis of the convenience factors in *Veryfine Products, Inc. v. Phlo Corp.*, 124 F. Supp.2d 16, 29 (D. Mass. 2000) is instructive. There, the court denied a motion to transfer the suit from Massachusetts to New York, finding that the defendants only showed "the common 'hardships' associated with civil litigation, namely travel, employee absence, document production, etc." and that "it is not a hardship to travel from New York to Boston in order to appear for a civil trial." *Id.* at 29. The court further found that where a New York company approached a Massachusetts company and engaged in business with that company, "the

8

Commonwealth has a significant interest in adjudicating that case within its borders . . . ." *Id.* at 30.

Defendants argue that New York law will govern this case, and thus that the federal district court in New York should hear the matter. To begin with, this case predominantly involves questions of federal copyright law, not state law. To the extent contract law questions are raised, it is by no means clear that New York rather than Massachusetts law would govern. Indeed, NBA has filed a counterclaim under Mass. Gen. Laws c.93A, specifically alleging that certain actions by Raphael took place primarily and substantially in the Commonwealth of Massachusetts. If one were to follow Defendants' reasoning, the existence of a c.93A claim would dictate that the case should be heard by the federal district court for the district of Massachusetts, which would be far more familiar with c.93A than would a court in New York. Finally, courts hearing motions to transfer have expressly ruled that it is of little or no consequence that another state's law may be applied in weighing whether transfer should be granted. *See Demont & Assoc. v. Berry*, 77 F.Supp.2d 171, 174 (D. Me. 1999) ("the application of the law of another state is of no consequence when considering a motion to transfer"); *Ashmore v. Northeast Petroleum Division of Cargill, Inc.*, 925 F. Supp. 36 (D. Me. 1996) (same).

Raphael's financial wherewithal compared to that of Defendants is a compelling consideration in this analysis. Raphael, who lives on a poverty-level income, is opposed by three corporations with very substantial assets whose resources dwarf his own. To add substantially to Raphael's expenses to suit Defendants' convenience would work a grave injustice, and possibly devastate Raphael's ability to proceed with this case. Courts ruling on motions under §1404(a) take the financial implications of transfer of venue into serious account. *Martinez v. Potter*, 383 F. Supp.2d 300, 303 (D. P.R. 2005) (denying motion to transfer and noting plaintiff could not

9

afford to litigate his case in the alternate forum); *Reebok Int'l, Ltd. v. Dunkadelic, Inc.*, 2004 U.S. Dist. LEXIS 3167 * 12-13 (March 2, 2004) (disparate financial resources is a factor in resolving a motion to transfer); *Sigros v. Walt Disney World Co.*, 129 F. Supp.2d 56, 2001 U.S. Dist. LEXIS 4418 *36 (D. Mass. 2001) ("the balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it"); *Kleinerman v. Luxtron Corp.*, 107 F. Supp.2d 122, 125 (D. Mass. 2000) (denying motion to transfer where transfer would make costs of litigation prohibitive, thereby denying the plaintiff his right to judicial relief).

Thus, given that Defendants merely seek to shift the inconvenience from themselves to Raphael and to increase the costs for the party least able to bear them, they have utterly failed to establish a compelling case for transfer on convenience grounds.

B. There Is No Forum Selection Clause Governing the Parties' Dispute.

Given the weakness of their arguments for transfer, Defendants in their desperation seek to invoke a forum selection clause that may govern this matter. Yet Defendants grasp at straws here, making arguments that are both ridiculous on their face and fundamentally dishonest.

To argue, as Defendants do, that the case should be tried in New York because the license agreements between NBA and the other defendants contain New York forum selection clauses entirely misses the mark. Unless the Defendants file cross-claims against each other, these agreements are not at issue in this suit. Raphael brings no claim under these agreements, and does not have to prove any breach of these agreements, the existence of which do not defeat his claim for copyright infringement against Getty Images (U.S.), Inc. and Photo File, Inc. Indeed it would work a grave injustice if NBA's wrongful conduct in licensing Raphael's photographs can then be used to deprive Raphael of the right to bring a copyright infringement suit in his home

10

forum. If courts in copyright cases were to permit forum questions to be resolved by licensing agreements that do not involve the work's author, what is to prevent onerous forum provisions from effectively depriving the author of a judicial remedy for infringement?

To then argue that the case should be tried in New York because NBA make a written pre-litigation settlement offer with a forum selection clause—which offer was *rejected*—is even more absurd. Having proposed an agreement containing a forum selection clause is a far cry from actually having obtained such an agreement.

Finally, we turn to Defendants' invocation of the forum selection clause in the letter from NBA to Raphael dated "As of August 1998" (the "August 1998 Letter"). This letter obviously relates only to the parties' work-for-hire arrangement, which involved new photographs taken on assignment for NBA, not the old photographs Raphael took on his own that are the subject of this action. Raphael is not making any claims in this suit with respect to photographs taken on assignment for NBA; his suit embraces only photographs taken prior to the work-for-hire arrangement. This critical distinction was made clear in: (i) Raphael's May, 2004 demand letter; (ii) pre-litigation discussions with NBA (including a meeting with affiant David Denenberg);[5] and in (iii) a discussion between counsel for Defendants and Raphael's counsel on the eve of this motion being filed, wherein Raphael's counsel *expressly disclaimed* that the suit involved any work-for-hire photographs. On what conceivable grounds, then, can Defendants argue in good faith that this trial involves the August 1998 Letter and should be governed by its forum selection clause? Indeed, it is astonishing that after discussion with Raphael's counsel Defendants would proceeded to pursue such an argument in the Motion to Transfer Venue.

---

[5] It is significant that Mr. Denenberg's affidavit offers no support for the theory that this lawsuit may involve work-for-hire photographs. Mr. Denenberg could not truthfully make any such representations, and thus it is left to counsel to make this argument up out of whole cloth.

11

In summary, this case involves copyright to photographs located in Massachusetts taken by a Massachusetts photographer of a Massachusetts sports team. One can understand why Defendants wish to deny a former Celtics photographer a trial before a Massachusetts jury. But Defendants have not sustained their heavy burden of making out a case for depriving Raphael of a right to trial in his home forum.

IV. CONCLUSION

For the above reasons, Plaintiff Richard Raphael respectfully requests the Court to deny Defendants' Motion to Transfer Venue.

Respectfully submitted,

RICHARD RAPHAEL,
By his attorneys,

Jeffrey P. Allen (BBO#015500)
Molly Cochran (BBO# 551833)
Seegel, Lipshutz & Wilchins, P.C.
20 William St., Suite 130
Wellesley, MA 02481
(781) 237-4400

Dated: January 12, 2006

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served via regular U.S. mail on Gina M. McCreadie, Esq., Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110 this 12th day of January, 2006.

Molly Cochran

169089.1.3358.7000