# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD RAPHAEL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 05-CV-11617-MLW |
| v. ) | |
| ) | |
| NBA PROPERTIES, INC., ) | |
| GETTY IMAGES (US), INC., and ) | |
| PHOTO FILE, INC. ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE AND REQUEST FOR A HEARING

Defendants NBA Properties, Inc. ("NBA Properties"), Getty Images (US), Inc. ("Getty Images"), and Photo File, Inc. ("Photo File") (collectively, "Defendants") submit this reply to Plaintiff Richard Raphael's *Opposition to Defendants' Motion to Transfer Venue and Request for a Hearing* (the "Opposition").

## INTRODUCTION

Mr. Raphael has opposed Defendants' motion to transfer with accusations and overheated rhetoric that betray a lack of substance and with a factual presentation that is highly misleading. Contrary to Mr. Raphael's protestations, it is his obligation to plead which works he alleges were improperly copied by the Defendants, and his undifferentiated allegations place at issue the August 1998 Agreement, which provides for exclusive jurisdiction in New York. With respect to the convenience of witnesses, Mr. Raphael has disclosed facts that would make a casual reader think he is incapable of travel. However, he has not provided medical evidence concerning the extent and constraints of his alleged conditions, and, in reality, he travels to the Super Bowl every year for photographic assignments. He has also made a selective and limited presentation

BOS1561631.3

of his financial condition.  Finally, in attacking the Defendants' transfer motion and accusing them of improperly profiting from his works, Mr. Raphael ignores the fact that his own claims fly in the face of express language in an agreement by which he granted NBA Properties the exclusive right to issue the licenses he now challenges, and he further ignores the substantial inconvenience he is imposing on out of state employee-witnesses of two other New York-based defendants who had no reason to suspect that they could be sued anywhere other than New York based on their involvement with these works.  The case should be transferred.

## ARGUMENT

**I.   THE ALLEGATIONS OF MR. RAPHAEL'S COMPLAINT NECESSARILY IMPLICATE THE AUGUST 1998 AGREEMENT AND ITS FORUM SELECTION CLAUSE.**

Mr. Raphael tries to avoid the fact he has pleaded his claims so as to implicate the August 1998 Agreement and its forum selection clause.  He attempts to accomplish this maneuver by invoking a statement by his counsel that photographs taken by Mr. Raphael during the time period covered by the August 1998 Agreement are not at issue.  *See* Opp. at 11.  He tries to bolster this argument with a hyperbolic accusation that Defendants have ignored this statement and thereby mischaracterized his claims — even though Defendants called the Court's attention to and specifically addressed this very same statement on page seven of their Memorandum of Law.  *See id.*; Defendants' Memorandum of Law in Support of Their Motion to Transfer Venue at 7.  Notwithstanding Mr. Raphael's protestations and accusations, there is nothing in the Complaint that identifies the works at issue or even the time period in which the works at issue were created so as to eliminate works that are subject to the August 1998 Agreement.  As the plaintiff, it is incumbent on Mr. Raphael to plead his claim properly.  Where his basis for federal subject matter jurisdiction is the Copyright Act, this obligation includes "listing the copyright

registration numbers issued by the United States that correspond to each of its copyrighted [materials], annexing copies of the United States Certificates of Copyright Registrations, and stating that the defendant has infringed upon one or more of these copyrights." *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 188 (D.D.C. 2005) (dismissing copyright claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for failure to comply with this standard) (citation and internal quotation marks omitted)). The Complaint merely lists three registration numbers for books containing "certain" photographs taken by Mr. Raphael and refers to unspecified "additional NBA photographs" that were allegedly copyrighted in 2005. Because the Complaint fails to identify the copyrighted works at issue or the time period of their creation, the Complaint necessarily implicates works subject to the August 1998 Agreement and its forum selection clause.

## II.     MR. RAPHAEL HAS NOT FULLY DISCLOSED HIS ABILITY TO TRAVEL OR HIS RESOURCES.

Mr. Raphael's opposition to transfer relies heavily on the purported burdens that would be placed on him by having to travel to New York. In making this argument, he has presented the Court with a highly selective disclosure of facts that does not paint an accurate picture.

Mr. Raphael claims that because of a "health condition" he "rarely travels outside the Marblehead area." *See* Opp. at 3. Yet, Mr. Raphael neglects to mention that he is one of a select group of individuals who has traveled to and attended *every* Super Bowl in history and that he *continues* to travel to each Super Bowl for photographic shoots, including Jacksonville, Florida in 2005, Houston, Texas in 2004, San Diego, California in 2003, New Orleans, Louisiana in 2002, and Tampa, Florida in 2001. *See* Second McCreadie Decl. at Exhs. 1-4. Presumably, Mr. Raphael also intends to travel to Detroit, Michigan for Super Bowl XL, which is scheduled to take place on February 5, 2006. *See id.* at Exh. 4. Further, in footnote two of his Opposition,

Mr. Raphael states that he is planning to travel to New York for the depositions of the defendants in this case. *See* Opp. at 3 n.2.

Mr. Raphael further claims that his alleged "health condition" consists of being "severely overweight" and "suffer[ing] from diabetes and hypertension." *See* Opp. at 3. Yet, Mr. Raphael fails to inform the Court that he has been severely overweight for at least ten years, including the time period when he traveled to NBA Properties' facility and the time when he consented to exclusive federal jurisdiction in the Southern District of New York for disputes arising out of the August 1998 Agreement. *See* Second Rosenzweig Decl. at ¶ 4. Mr. Raphael also offers no evidence as to how long he has lived with high blood pressure and/or diabetes or the severity of or specific constraints imposed by either of these conditions. *See* Raphael Aff. at ¶ 1. Clearly, these conditions have not prevented him from traveling to the Super Bowl each year. Indeed, Mr. Raphael offers no medical evidence regarding his ability to travel and no evidence that would explain why he can travel to the Super Bowl every year but not to a trial in New York.

Mr. Raphael also claims financial hardship, but makes only a limited and selective disclosure regarding his financial circumstances. In his Opposition, Mr. Raphael claims that "since 2001, his annual income . . . has typically averaged less than $10,000." *See* Opp. at 3. Given that Mr. Raphael is ***retired***, such statements of annual income are not evidence of his financial ability to litigate in New York. *See id.* at 3; Raphael Aff. at ¶ 6. Indeed, Mr. Raphael states that he is already prepared to incur what he calls "the considerable expense of traveling to New York for depositions" (Opp. at 3 n.2) and has considerably increased this expense by deciding to sue three New York-based defendants instead of simply the one party with whom he had contracted. Moreover, while Mr. Raphael's Opposition asserts that Mr. Raphael's income has typically averaged less than $10,000 per year since 2001 (Opp. at 3), his affidavit reveals that

4

this statement does not apply to 2003 or 2004 when his "income included a $25,000 payment from the NFL." *See* Raphael Aff. at ¶ 6.

Although Mr. Raphael claims hardship in having to retain local counsel admitted to the Southern District of New York, he neglects to mention that at least four attorneys at his current law firm are admitted to practice in the State of New York, and at least two of these attorneys are admitted to practice in federal courts of New York, one of whom is admitted to the Southern District of New York. *See* Second McCreadie Decl. at Exhs. 5 and 6. In addition, pursuant to Local Rule 3.1(c) for the Southern District of New York, "[a] member of good standing of the bar of ***any state*** or of ***any United States District Court***" may be admitted to appear *pro hac vice* "to argue or try a particular case in whole or in part as counsel or advocate . . . ." *See id.* at Exh. 7 at 4. (emphasis added). Thus, Mr. Raphael's current counsel will have little difficulty representing Mr. Raphael in the Southern District of New York.

### III. MR. RAPHAEL'S CLAIM OF UNFAIRNESS BELIES THE UNFAIRNESS OF THE BURDENS HE IS IMPOSING ON EMPLOYEES OF THREE OUT OF STATE DEFENDANTS.

Mr. Raphael complains that "three large corporate defendants" who are supposedly "profiting from Raphael's creative work" and are supposedly "depriv[ing] [him] of his livelihood" have what he calls the "audacity to complain that they should be involved in litigation beyond the comforts of their corporate headquarters in New York." *See* Opp. at 4. These assertions belie the fundamental unfairness of what Mr. Raphael is trying to do.

Mr. Raphael chose to bring this action claiming that NBA Properties was engaged in unauthorized licensing of his photographs notwithstanding the October 1995 Agreement attached to his Complaint, which unequivocally states that "NBA Photos shall be the exclusive licensor of the Old Materials and the New Materials. . . ." *See* Compl. at Exh. A at 1-2. Not content with

dragging NBA Properties to court in Boston to defend against claims that fly in the face of this agreement, Mr. Raphael has chosen to sue two other New York-based defendants who never did business with Mr. Raphael and whose contractual agreements with NBA Properties make clear that they had no reason to believe that they could be sued anywhere other than New York based on their use of the works in question. *See* Romanelli Decl. at ¶ 14 and Exh. 1; Reilly Decl. at ¶¶ 6 and 9 and Exhs. 1-2. Mr. Raphael then invokes his status as a retired individual. *See* Opp. at 3; Raphael Aff. at ¶ 6. Yet, he seeks to force numerous employees of the three separate defendants to suspend their daily employment duties while they appear at trial in Boston, whereas his own schedule is clearly more flexible.

The fact that Mr. Raphael has chosen to sue three out of state defendants also differentiates this case from the authority on which he relies. For example, Mr. Raphael highlights language from *Veryfine Products, Inc. v. Phlo Corporation*, 124 F. Supp. 2d 16 (D. Mass 2000), which quotes from *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996) and *Koster v. Lumbermen's Mutual Casualty Company*, 330 U.S. 518, 524 (1947) for the proposition that a plaintiff should not be deprived of its choice of forum absent oppressiveness or considerations affecting the court's administration or legal problems. However, the language that Mr. Raphael quotes from *Veryfine Products* was originally preceded in both *Nowak* and *Koster* with the sentence: "'[w]here there are ***only two parties to a dispute***, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice.'" *Nowak*, 94 F.3d at 720 (quoting *Koster*, 330 U.S. at 524) (emphasis added). Such language makes clear that Mr. Raphael's quoted standard applies ***only*** to disputes between ***two parties***.

Other authority makes clear that "[t]he weight accorded to plaintiff's choice depends upon the circumstances of the case." *Princess House, Inc. v. Lindsay*, 136 F.R.D. 16, 18 (D.

6

Mass. 1991). Indeed, as this Court has held, a "plaintiff's choice of forum alone is not controlling . . . " and can be "overcome by the strong showing that transfer of the case to another judicial district would, on balance, promote the interests of justice and be more convenient to the parties and witnesses." *Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 5 (D. Mass. 1987). Otherwise, Mr. Raphael cites a string of cases without regard for their factual circumstances and without acknowledging the settled rule that courts "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Cruickshank v. Clean Seas Co.*, 2005 U.S. Dist. LEXIS 30862, at *29 (D. Mass. Oct. 19, 2005) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (further citations omitted)); *see* 28 U.S.C. § 1404(a). In this case, Mr. Raphael signed one agreement that specifically authorizes NBA Properties to do what he complains about, signed a second agreement with respect to certain works which provides for exclusive jurisdiction in New York, and now seeks to force employees of NBA Properties, as well as employees of two other Defendants who had no reason to believe that they could be sued anywhere other than New York based on their involvement with these works, to testify in Massachusetts.

Nor can Mr. Raphael tip the scales of convenience to witnesses by pointing to the involvement of his former attorney, Mr. Krasker, who is retired and lives in both Massachusetts and Florida. *See* Raphael Aff. at ¶ 4. Clearly, Mr. Krasker is able to travel, and, because he is retired, his schedule will have greater flexibility. Moreover, if the trial occurs while Mr. Krasker is in Florida, his attendance in New York for trial will be no more inconvenient than his attendance in Massachusetts.

Finally, in contrast to Defendants' detailed summaries outlining the subject areas of likely testimony for each of its six anticipated witnesses, Mr. Raphael's Opposition does not

contain a similar summary for his two witnesses. This omission is particularly significant given that the enforceability of the October 1995 Agreement and the August 1998 Agreement will be a complete defense to Mr. Raphael's claims and given that Mr. Raphael has provided no reason why parol evidence would be admissible. Accordingly, the inconvenience that Mr. Raphael imposes on the employee-witnesses of three New York-based Defendants decidedly tips the balance in favor of a transfer of this case to the Southern District of New York.[1]

## CONCLUSION

For the foregoing reasons, and for those reasons stated in Defendants' initial memorandum of law in support of their motion to transfer venue, the Court should transfer this case to the Southern District of New York.

.

---

[1] Mr. Raphael also brushes off the significance of applying out of state law to the agreements at issue by pointing to the Copyright Act and to authority from Maine deemphasizing this factor. Mr. Raphael ignores the fact that enforceability of an agreement giving NBA Properties licensing rights and an agreement deeming certain photographs to be a work made for hire will be a complete defense to the copyright claim. He also ignores precedent of this Court which weighs the application of foreign law when deciding whether to transfer a case. *See e.g., Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 5 (D. Mass. 1987) (finding that a North Carolina forum deciding questions of North Carolina law would promote the interests of justice). Moreover, Mr. Raphael offers no substantive response to Defendants' contention that New York law is highly likely to govern the October 1995 Agreement. *See* Opp. at 9.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | NBA PROPERTIES, INC.<br>GETTY IMAGES (US), INC., and<br>PHOTO FILE, INC., |
|  | By their attorneys, |
|  |  /s/ Gina M. McCreadie<br>Nicholas G. Papastavros, BBO No. 635742<br>Mark D. Robins, BBO No. 559933<br>Gina M. McCreadie, BBO No. 661107<br>NIXON PEABODY LLP<br>100 Summer Street<br>Boston, MA  02110<br>Tel:  (617) 345-1000 |
| Dated: January 30, 2006 | Fax:  (617) 345-1300 |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Transfer Venue and Request for a Hearing*, which was filed electronically with the Court through the Electronic Case Files system, will be sent electronically to registered counsel of record as identified on the Notice of Electronic Filing ("NEF") and a paper copy will be sent via first class mail on January 30, 2006 to any counsel of record who are not registered on NEF.

 /s/ Gina M. McCreadie
Gina M. McCreadie